**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | |
|---|---|
| BELAD LIKU DIANA ESSAME *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 8:10-cv-03519-AW |
| SSC LAUREL OPERATING COMPANY LLC, | |
| Defendant. | |

## **MEMORANDUM OPINION**

Plaintiff Belad Liku Diana Essame, on behalf of herself and others similarly situated, brings this action against Defendant SSC Laurel Operating Company LLC d/b/a Patuxent River Health and Rehabilitation Center. Plaintiff asserts claims for violations of the FLSA, the Maryland Wage and Hour Law (MWHL), the Maryland Wage Payment and Collection Law (MWPCL), as well as for unjust enrichment. Before the Court is Plaintiff's Motion for Conditional Class Certification. The Parties have fully briefed the matter and the Court deems no hearing necessary. For the reasons that follow, the Court **GRANTS** Plaintiff's Motion for Conditional Class Certification.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

The instant dispute arises out of an employment relationship between Plaintiffs and Defendant. Lead Plaintiff Belad Liku Diana Essame (Essame) was hired by Defendant SSC Laurel Operating Company LLC[1] on March 16, 2010 for an LPN position. On December 16,

---

[1] SSC Laurel Operating Company LLC does business as Patuxent River Health and Rehabilitation Center. The Court hereinafter refers to SSC Laurel as "Patuxent."

1

2010, Essame filed a Class/Collective Action Complaint (Complaint). Doc. No. 1. The crux of the Complaint is that Patuxent failed to pay Essame and other nurses it compensated on an hourly basis for work they performed (1) during and/or through their unpaid thirty-minute meal break and/or (2) after the conclusion of their shift. Essame also filed a declaration in which she repeats her allegation that Patuxent required her to work through meal breaks and after the conclusion of her shift and estimates that she worked seven unpaid hours each week. Doc. No. 4.

Four Opt-In Plaintiffs have filed declarations seeking to opt in to Essame's Complaint. Doc. Nos. 2, 3, 20–21.[2] Respecting the order in which they filed their declarations, the Opt-In Plaintiffs are called: Andrew Mensah-Sowah, Kodjo Newton, Joseph Darko, and Alfred Turay. The Opt-In Plaintiffs similarly allege that Patuxent failed to pay them for work they performed during/through their unpaid thirty-minute meal break and after the conclusion of their shift. As with Essame, the Opt-In Plaintiffs estimate in their declarations how many unpaid hours they worked each week. Their estimates range from three to five hours.

Patuxent answered on March 7, 2011. Doc. No. 12. On the same date, apparently, Patuxent issued requests for the production of documents to Essame, Mensah-Sowah, and Newton. *See* Doc. No. 29 at 6. On March 28, 2011, Essame filed the instant Motion for Conditional Class Certification.[3] Doc. No. 15. In this Motion, Essame seeks

> entry of an order conditionally certifying Plaintiff's FLSA claim and implementing a procedure whereby all individuals employed as nurses by Defendant on an hourly basis at its Patuxent River Health and Rehabilitation Center since December 16, 2007 will be promptly notified of the existence of this lawsuit and of their right to join the lawsuit as party plaintiffs.

*Id.* at 1.

---

[2] The Court refers to Essame and the Opt-In Plaintiffs collectively as "Plaintiffs."
[3] Essame chose not to move for certification under Rule 23 of her state law claims at this time.

According to Patuxent, because it had made discovery requests before Essame filed said Motion, "the parties agreed to stay Defendant's response to the Motion and more fully engage in discovery concerning the allegations of [Plaintiffs], as well as the scope of the potential class." Doc. No. 29 at 6–7. The Parties memorialized the terms of their agreement in a Stipulation filed on April 14, 2011. Doc. No. 19. The Stipulation unequivocally states as follows:

> In order for Defendant to take some **limited initial discovery** in response to this motion of named plaintiff Belad Liku Diana Essame, and opt-in plaintiffs Andy A. Mensah-Sowah and Kodjo K. Newton, the parties have agreed to toll, as of April 28, 2011, the running of the statute of limitations applicable to any claim under the Fair Labor Standards Act by any individual falling within the class definition as described in Plaintiff's "Motion for Conditional Certification."

*Id.* ¶ 2 (emphasis added). Further stressing the limited nature of the discovery to take place, the Stipulation adds: "Plaintiff shall also have the option of taking some **limited initial discovery**." *Id.* ¶ 3 (emphasis added).

Thereafter, the Parties participated in the consented-to discovery. During this period of limited discovery, Patuxent received at least two extensions of time to respond to Essame's Motion for Conditional Class Certification. *See* Doc. Nos. 24, 26, 27–28. In the meantime, Essame filed a Supplement to her Motion for Conditional Class Certification (Supplement). Doc. No. 25. Essame utilizes her Supplement to cite portions of the limited discovery record that, in her estimation, support her Motion for Conditional Class Certification. On July 8, 2011, Patuxent filed its Opposition to Plaintiff's Motion for Conditional Class Certification (Opposition). Doc. No. 29. Essame has replied and the matter is ripe for review.

## II.     LEGAL ANALYSIS

"Under the FLSA, plaintiffs may maintain a collective action against their employer for violations under the act pursuant to 29 U.S.C. § 216(b)." *Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp.2d 762, 771 (D. Md. 2008). In relevant part, § 216 provides as follows:

> An action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). "This provision establishes an 'opt-in' scheme, whereby potential plaintiffs must affirmatively notify the court of their intentions to be a party to the suit." *Id.* (citing *Camper v. Home Quality Mgmt., Inc.*, 200 F.R.D. 516, 519 (D. Md. 2000)). District courts "have discretion in appropriate cases" to facilitate notice to potential plaintiffs in order to enforce the FLSA's collective action provision. *See Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989).

The touchstone in determining whether it is appropriate for courts to exercise this discretion "is whether Plaintiffs have demonstrated that potential class members are 'similarly situated.'" *Quinteros*, 532 F. Supp.2d at 771 (quoting 29 U.S.C. § 216(b)). "A group of potential plaintiffs are 'similarly situated' when they together were victims of a common policy or scheme or plan that violated the law." *Marroquin v. Canales*, 236 F.R.D. 257, 260 (D. Md. 2006) (citing *Jackson v. N.Y. Tel. Co.*, 163 F.R.D. 429, 432 (S.D.N.Y. 1995)). "[T]he inquiry at this stage is less stringent than the ultimate determination whether the class is properly constituted . . . ." *Id.* at 259 (citing *Jackson*, 163 F.R.D. at 431). Therefore, to satisfy this standard, plaintiffs must

make only a "relatively modest factual showing." *See id.* (citing *D'Anna v. M/A-COM, Inc.*, 903 F. Supp. 889, 894 (D. Md. 1995)). "This would include factual evidence by affidavits or other means . . . ." *Quinteros*, 532 F. Supp.2d at 772 (citing *Camper*, 200 F.R.D. at 519).

In this case, based on the limited discovery record, Essame has made a modest factual showing that Patuxent implemented a common policy or scheme that violated the rights of a group of potential plaintiffs under the FLSA. First, Patuxent's ex-staffing coordinator/scheduler, DeShone Barker, testified during her deposition that Patuxent had a practice of eliminating potential overtime hours from its Kronos time system. *See, e.g.*, Barker Dep. 15:06–18:22, Doc. No. 25-2. Patuxent, in fact, concedes that Barker testified that the "Director of Nursing, Muriel Langley, instructed her to edit nurse time clock punches to remove unapproved time worked beyond their scheduled shift end." Doc. No. 29 at 33. Although Patuxent goes on to attack Barker's testimony as "not credible," credibility determinations are usually inappropriate for the question of conditional certification. *See Colozzi v. St. Joseph's Hosp. Health Ctr.*, 595 F. Supp.2d 200, 205 (N.D.N.Y. 2009) (stating that "[a] plaintiff's burden at this preliminary stage is minimal" and "the court does not weigh the merits, resolve factual disputes, or make credibility determinations").

Second, as previously indicated, all Plaintiffs have submitted sworn declarations stating that: (1) they worked as hourly employees for Patuxent; (2) Patuxent automatically deducted thirty minutes from their paychecks for a purported meal break; (3) Patuxent regularly required them to work during and/or through their unpaid meal break due to the demands of their employment; (4) Patuxent required them to continue working following the end of their compensable shifts; and (5) Patuxent subjected other potential FLSA plaintiffs to the same treatment. As this Court made clear in *Quinteros*, it is well-established that factual evidence in

5

the form of affidavits is probative of whether a group of potential plaintiffs fell victim to a common policy, scheme, or plan that violated the FLSA.

Third, Plaintiffs' deposition testimony has some tendency to corroborate the allegations they make in their affidavits. The Court starts with the assertion that Patuxent ordered them to punch out and return to work. Concerning this allegation, all the Opt-In Plaintiffs, along with the ex-staffing coordinator/scheduler Barker, testified that either Patuxent made them keep working after clocking out at the end of their shifts, or that they knew of nurses whom Patuxent made do the same, or both. For instance, Darko testified that "most of [the] time when we're taking over, that is [the] time they tell you that . . . I couldn't take [a] break, I've been worked throughout and I still have to go and clock out and come and finish my work." Doc. No. 25-3 at 69:20–7:3. Both Turay and Mensah-Sowah identified specific Patuxent employees who allegedly told them that they had to clock out and then return to work. *See* Doc. No. 25-4 at 46; Doc. No. 25-5 at 54–55. Newton makes similar allegations, testifying that his unit manager told him at times that he would be better off clocking out and finishing his job. *See* Doc. No. 25-6 at 130–33. For her part, Barker stated that she heard numerous complaints about this practice in addition to witnessing it one to three times a week. *See* Barker Dep. 43–45, Doc. No. 25-2. Therefore, although these declarations are admittedly vague, they are consistent with Plaintiffs' affidavits.

The record also contains evidence tending to bolster Plaintiffs' claims that Patuxent failed to pay them for hours worked during their unpaid meal break. For starters, Jodie Dyer, a senior Patuxent official, testified that the Kronos time system "automatically deducts a half hour" out of employees' pay when they fail to clock out for lunch. *See* Doc. No. 25-1 at 81. Furthermore, Barker testified that she heard complaints about employees not receiving their scheduled breaks throughout her employment as a staffing coordinator/scheduler. Barker Dep., 40–41, Doc. No.

25-2. Barker further testified that these complaints came from nurses on all three shifts (i.e. day, evening, and night), as well as in all four units. *Id.* at 41. Plaintiffs' testimony is generally consistent with Barker's in this regard. *See, e.g.*, Doc. No. 25-3 at 66–69 (Darko identifying several employees whom he alleges Patuxent made work through their lunch breaks).

What is more, the limited discovery record contains some evidence that Patuxent's alleged practices of making employees work through their unpaid meal breaks and/or past their scheduled shifts occurred during all three shifts and in all units of the facility. For example, as stated above, Barker testified that the complaints she heard came from nurses on all three shifts and in all four units. Patuxent itself essentially concedes that Plaintiffs worked in most, if not all, of the four units. To illustrate, Patuxent writes that "Mr. Newton worked on **various units** during his employment with Patuxent River." Doc. No. 29 at 20 (emphasis added). Similarly, Patuxent states that the "majority" of Essame's shift assignments were to unit one and that Turay worked "mainly" in unit two. *Id.* at 19, 22. As for the shifts, Patuxent acknowledges that Plaintiffs worked the evening and night shifts. *See id.* 19–24. Moreover, while the record lacks evidence that Plaintiffs worked the day shift more than once in a while, Barker testified that the complainants included daytime employees. Therefore, in conjunction with the other record evidence, there is some evidentiary basis for conditionally certifying a class consisting of nurses employed on all shifts and in all units.

Patuxent makes several unpersuasive counterarguments. First, Patuxent maintains that "Plaintiff and Opt-in Plaintiffs' allegations and factual circumstances are dissimilar and anecdotal and, therefore, only merit individualized treatment." Doc. No. 29 at 25. The salient flaw in this argument is that it delves too deeply into the merits of the dispute; such a steep plunge is inappropriate for such an early stage of a FLSA collective action. The crux of the

matter is whether Plaintiffs have made a modest factual showing that they were victims of a common policy or scheme that contravenes the FLSA. For the reasons articulated above, Plaintiffs have made this modest showing.

Patuxent invites the Court to apply an intermediate standard of analysis because the Parties have conducted some discovery. The Court declines this invitation for several reasons. First, Patuxent has identified no authority from this jurisdiction standing for the proposition that courts may disregard the traditional two-stage analysis where the parties have completed "some" discovery. *See, e.g.*, *Syrja v. Westat, Inc.*, 756 F. Supp.2d 682, 686 (D. Md. 2010) (emphasis added) (quoting *Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 300 (D. Md. 2007)) ("In the second stage, **following the conclusion of discovery**, 'the court engages in a more stringent inquiry to determine whether the plaintiff class is [in fact] "similarly situated" in accordance with the requirements of § 216, and renders a final decision regarding the propriety of proceeding as a collective action.'"); *Quinteros*, 532 F. Supp.2d at 772 n.6 (emphasis added) (internal quotation marks omitted) ("the Court will entertain, **after discovery has largely been complete**, a motion for decertification by the Defendants").

Second, there are sound substantive reasons for refraining to apply an intermediate standard upon the completion of just some discovery. Judge J. Leon Holmes cogently articulated these concerns in *Helmert v. Butterball*, LLC, No. 4:08CV00342 JLH, 2009 WL 5066759, at *6–7 (E.D. Ark. Dec. 15, 2009). In *Helmert*, the court rejected the employer's argument that the court "should proceed to th[e] second stage because the parties [had] completed all certification discovery." *See id.* In rejecting this argument, the *Helmert* court noted a long line of authority advancing the notion that "a substantive second-stage analysis is not appropriate until all discovery—including merits discovery—is substantially complete." *Id.* at *6. One rationale for

these holdings is that "when the parties have engaged in only limited discovery, it is premature to conclude that the evidence is representative of what the plaintiffs would present given further discovery." *Id.* (citing *Gieseke v. First Horizon Home Loan Corp.*, 408 F. Supp.2d 1164, 1166–67 (D. Kan. 2006)). A second justification is that "the notice stage analysis places the burden of proof on the plaintiff, but the opt-in stage analysis, which typically follows a motion to decertify, places the burden of proof on the defendant; merging the two stages of analysis would inevitably skew the burden of proof." *Id.* (citing *Hammond v. Lowe's Home Ctrs., Inc.*, No. Civ. A. 02-2509-CM, 2005 WL 2122642, at *3 (D. Kan. Sep. 1, 2005)). These concerns have full applicability to the case at bar and caution against ratcheting up the standard of review because of the limited discovery that the Parties have conducted.

Another policy concern not identified by the *Helmert* court concerns the calibration of the intermediate standard. Although Patuxent calls for an "intermediate" standard, Patuxent has failed to give the Court guidance regarding the location of this standard between the poles that the first- and second-stage analyses occupy. Intermediate connotes in the middle; therefore, the standard seems ideally suited for situations in which the parties have conducted approximately half of the discovery. But what about cases where—as may be the case here—the parties have conducted only a third, a quarter, or even a fifth discovery? Are courts still to apply the intermediate standard? Patuxent might call for a sliding scale in which the Court would calibrate the standard to the quantum—and perhaps quality—of conducted discovery. Assuming this approach is analytically sound, the Court would nonetheless display disinclination to inject this much flexibility—and, by extension, uncertainty—into the remedial scheme that § 216(b) contemplates.

Moreover, as Essame notes in her reply, the smattering of cases in which courts have applied a more stringent standard of review before the completion of discovery are distinguishable. In Essame's apt words, "[o]ther courts . . . have . . . applied an intermediate analysis only after (i) significantly more discovery was completed compared to this case[,] or (ii) informal notice was sent to potential opt-ins by the plaintiffs." *See* Doc. No. 30 at 2 (citing cases). Accordingly, the Court declines to apply an intermediate standard of review.[4]

Patuxent's third, and final, counterargument is more aptly characterized as a constellation of three faint observations: (1) Patuxent had written policies in place explaining its time clock, meal break, and overtime policies; (2) Plaintiffs acknowledged that Patuxent compensated them for some overtime; and (3) a recent Supreme Court case proposes that commonality dictates whether class certification is appropriate. *See* Doc. No. 29 at 26 (citing *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011)). Regarding the first observation, it is well-settled that the promulgation of written policies, per se, is insufficient to immunize an employer from conduct that otherwise contravenes the FLSA. *See, e.g.*, 29 C.F.R. § 785.13 ("[Management] cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so."). The second observation, for its part, misses the mark. Even if Patuxent compensated Plaintiffs for "some" of the overtime that they worked, it does not follow that Patuxent properly compensated Plaintiffs for "all" of their overtime hours. Besides, this

---

[4] The Court highly doubts that the application of an intermediate standard of review would alter the Court's disposition. Although Plaintiffs' factual averments are rather vague, the testimony of two key Patuxent representatives corroborated them in key respects. Furthermore, Patuxent has yet to come forward with evidence definitely showing that Plaintiffs' job duties were significantly dissimilar. Quite the contrary, the available evidence lends some support to the conclusion that Plaintiffs "work in a single location, in similar positions, under a single management structure." *Syrja*, 756 F. Supp.2d at 690. Additionally, Plaintiffs have isolated two discrete practices as potentially unlawful. For these reasons, it is exceedingly unlikely that the application of the elusive intermediate standard would make a difference.

observation overlooks Plaintiffs' claims that they worked through all or part of their unpaid meal break. The remark about the Supreme Court's decision in *Dukes* is likewise a red herring. Because of the special policy considerations that the FLSA comprehends, Rule 23 standards are generally inapplicable to FLSA collective actions. *See, e.g.*, *D'Anna*, 903 F. Supp. at 892 n.2 (citation omitted); *see also* Doc. No. 30 at 10 n.7 (collecting authority).

The preceding analysis shows that Essame has made a modest factual showing that Patuxent implemented a common policy or scheme that violated the rights of a group of potential plaintiffs under the FLSA. Accordingly, the Court grants Essame's Motion for Conditional Class Certification.

## III.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Essame's Motion for Conditional Class Certification. As a result, the Court will issue a separate Order containing, inter alia, instructions regarding the issuance of court-supervised notice.

| March 12, 2012 | /s/ |
|---|---|
| Date | Alexander Williams, Jr.<br>United States District Judge |